

**KESTENBAUM & MARK LLP**
ATTORNEYS AT LAW

RICHARD S. KESTENBAUM*
SCOTT L. KESTENBAUM

OF COUNSEL
BERNARD S. MARK
JILL S. MONOSON

*MEMBER NEW YORK AND FLORIDA BARS

40 CUTTER MILL ROAD, SUITE 300, GREAT NECK, NY 11021

TEL: (516) 466-0410
TEL: (516) 487-0810
FAX: (516) 829-3729

RKESTENBAUM@KMTAXLAW.COM

July 10, 2024

*E File*
*Courtesy Copy via Federal Express*

Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722-9014

> **RE:**   **United States v. Daniel Colucci**
> **Criminal Docket Number:  23 CR 00417-001 (GRB)**

Dear Judge Brown:

Defendant Daniel Colucci ("Colucci") submits this letter in connection with his sentencing, which is currently scheduled for July 19, 2024, at 11:30 A.M.  As demonstrated in more detail below, we respectfully submit that a sentence substantially below that of the advisory guidelines is warranted in this case.

## I.    DEFENSE COUNSEL'S SENTENCING PROPOSAL

We respectfully submit that based on the totality of the circumstances, a non-guideline, non-custodial sentence, is "sufficient, but no greater than necessary" to fulfill the purpose of sentencing.

## II.    BACKGROUND/GUIDELINE CALCULATIONS

As the Court is aware, Colucci pled guilty to a twelve count indictment on December 15, 2023, admitting that in violation of 26 U.S.C. §7202, he failed to collect, truthfully account for and pay over to the Internal Revenue Service federal income taxes and FICA taxes withheld from the wages of his employees. Colucci is 75 years old and has no prior criminal history affecting his criminal history computation.  The Pre-Sentence Investigation Report sets forth a Guideline range of imprisonment of 18 to 24 months based on a Guideline level of 15, in Criminal History Category 1.

Prior to his guilty plea, Colucci accepted responsibility for his actions, and has acted consistently with that acceptance throughout the investigation of this case. Colucci cooperated with the United States Attorney's Office in order to assist in determining the tax loss attributable to him.

## III.    SENTENCING AUTHORITY

It is now well settled that, pursuant to United States v. Booker, 543 U.S. 220 (2005), district courts have the ability to fashion a sentence tailored to the individual circumstances of the case by requiring courts to consider all of the factors set forth in Title 18, U.S.C. Section 3553(a).  Indeed, under Title 18 U.S.C. §3553(a) courts are



required to sentence below the range if such a sentence would be sufficient to achieve the purpose of punishment. Because the sentencing guidelines are merely advisory in the wake of <u>Booker</u>, this Court may consider all of the factors set forth in 18 U.S.C. §3553(a) and sentence the defendant below the sentence recommendation by the advisory guidelines.

Following up on its decision in <u>Booker</u>, the Supreme Court in <u>Gall v. United States</u>, (2007) and <u>Kimbrough v. United States</u>, (2007), effectively reaffirmed the district courts' broad sentencing discretion by permitting the courts to impose a sentence after considering "all" the §3553(a) factors, with the Guidelines being only the "starting point and initial benchmark." <u>United States v. Jones</u>, 531 F.3d 163, 174 (2d Cir. 2008). Any attempt to give special weight to the Guideline ranges would be contrary to <u>Booker</u> which ruled the Sentencing Guidelines as advisory.

The sentencing court must make an individualized assessment based upon the facts presented after full consideration of all the §3553(a) factors. <u>Gall v. United States</u>, 128 S. Ct. at 596-97. The sentencing court may, "in the particular case [determine that] a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." <u>Kimbrough v. United States</u>, 128 S. Ct. at 564 (citing, 18 U.S.C. §3553(a)). The "greater than necessary" language of §3553(a) includes the need for a sentence to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense". The Supreme Court recognized that a prison sentence may not promote respect for the law if it appears unduly harsh after consideration of all the factors of a particular case. <u>Gall v. United States</u>, 128 S. Ct. at 599; see also, <u>Nelson v. United States</u>, 555 U.S. 350, 352 (2009)("The guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable."); see also, <u>Dillon v. United States</u>, 560 U.S. 817, 841 (2010)(A "sentencing court may not presume [the Guidelines] correct or reasonable when it considers an individual sent enc decision."). Nor should the sentencing court presume a non-guideline sentence "unreasonable." <u>Irizarry v. United States</u>, 128 S. Ct. 2198, 2201-02 (2008). Further, in exercising discretion, a sentencing judge is "generally free to impose sentences outside the recommended range" and an appellate court "will not substitute our judgment for the district courts on the question of what is sufficient to meet the §3553(a) considerations in any particular case." <u>United States v. Cavera</u>, 550 F.3d 180, 188 (2d Cir. 2008).

Among the factors in 18 U.S.C. §3553(a) are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, to provide respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct, and (C) to protect the public from further crimes of the defendant; and (3) the need to avoid unwarranted sentence disparities among defendants with similar conduct.[1] Criminal tax sentences often vary significantly from the applicable Sentencing Guidelines range with the result that more than seventy-eight (78%) percent of the defendants in criminal tax cases received sentences below the Guidelines range. [2] In addition to the factors set forth in 18 U.S.C. Section 3553(a), 18 U.S.C. §3661 provides that "no limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which the court may receive for the purposes of imposing an appropriate sentence."

---

[1] Recent examples of cases with similar criminal activity in the Eastern District are the cases of <u>USA v. Jafar Haider</u>, 23-CR-31(FB), wherein the defendant was sentenced by Judge Frederic Block to probation of two (2) years; <u>USA v. Sung Soo Chon</u>, 22-CR-259-001 (LDH), wherein the defendant was sentenced by Judge LaShann DeArcy Hall to probation of two (2) years; <u>U.S. v. Zhi Hui Zheng</u>, 19-CR-262-NGG, wherein the defendant was sentenced by Judge Nicholas G. Garaufis to probation of four (4) years; <u>U.S v. David McCarthy</u>, 22-CR-491-NRM, wherein the defendant was sentenced by Judge Nina R. Morrison to two (2) years of probation, <u>U.S. v. John Declan White</u>, 22-CR-524, wherein the defendant was sentenced by Judge Nina R. Morrison to two (2) years of probation, <u>U.S. v. Jaramillo</u>, 19-CR-261-KAM, in the Eastern District involving criminal activity of the same type, wherein the defendant was sentenced by Judge Kiyo A. Matsumoto to imprisonment of 21 days, followed by two (2) years of supervised release and <u>U.S. v. Taylor</u>, 18-CR-00251-DRH, wherein the Defendant was sentenced to a term of three (3) years' probation. The above cases sometimes included additional non-custodial punishment such as community service.

[2] United States Sentencing Commission Data files.



Based upon the "individualized assessment" of the facts presented herein and after consideration of all the factors detailed in §3553(a), we respectfully submit, that a non-custodial sentence substantially below that of the advisory Guideline range is an appropriate and reasonable sentence for Colucci. It is respectfully submitted that the defendant be sentenced to twelve (12) months of probation together with a special condition of 100 hours of community service as well as an order to pay restitution in the amount of $554,241.00, which has been paid to the Clerk of the Court by a check from my escrow account. As your honor may recall, the Defendant objected to the Probation Department's measure of restitution owed by Defendant. Defendant's objection was raised before your Honor by letter dated April 8, 2024, setting forth why the charging statute, 26 U.S.C. §7202, does not apply to non-withheld taxes (copy enclosed). On April 15, 2024, Assistant United States Attorney, Charles Kelly, wrote to the Court that the government is discussing the Defendant's objection. To this date, no response from the United States has been received. We also respectfully request that the Defendant be permitted to complete his medical treatment for prostate cancer as indicated in the attached letter from his treating physician.

## IV.    FACTORS FAVORING A SENTENCE BELOW ADVISORY RANGE

(a)    Immediate Acceptance of Responsibility

Upon learning of the IRS Investigation, Colucci accepted responsibility for his actions, and assisted the Government in the determination of the tax loss arising from the defendant's actions.

Colucci's early acknowledgment of his misconduct and cooperation with the government in determining the accurate tax-loss amount warrants the Court's consideration of a sentence less than what the Sentencing Guidelines would imply.

(b)    The Need to Provide Restitution to any victim of the Offense:

Pursuant to 18 U.S.C. § 3553(a) (7), the need to provide restitution to any victim of an offense must be taken into consideration when fashioning a just sentence. The Defendant has paid restitution in the amount of $554,241.00 which is the full amount of the restitution owed.

(c)    Personal Characteristics:

Colucci has always been a law abiding citizen with the exception of the events charged herein. He is a decent person who made a mistake, which he greatly regrets.

When we asked Colucci's friends and family to provide character references on his behalf, many responded with letters. I am attaching copies of some of the letters containing praises and commendations which show the positive effect that Colucci has had on others in his personal life.

We respectfully ask the Court to note the themes of honor, compassion, charity, and family involvement that runs through the references, which support the notion that his behavior that led us to this day was inconsistent with his general character. We believe the characterizations of Colucci in the attached letters present "unique issues" warranting a variance from the Guideline range to a non-custodial sentence. Cf. United States v. Pellegrini, Crim. Action No. 08-210 (GEB), 2008 U.S. Dist. Lexis 97474 (D.N.J. 11/26/08).

## V.    CONCLUSION

It has been widely held that when determining a proper sentence for a criminal defendant, the sentencing Judge should also factor in three important elements: protection of the community, deterring future crimes, and restoring victims to whole.



KESTENBAUM
& MARK LLP
ATTORNEYS AT LAW

1.      Protection of the Community:

Colucci is not a violent person who needs to be separated from society.  Therefore, we respectfully suggest that incarceration of Colucci is not needed to protect the community at large.

2.      Deterring Future Crimes:

Colucci can be effectively monitored and supervised under the control of the United States Department of Probation, if necessary.  It is respectfully submitted that Colucci will use this life-changing experience and any responsibilities imposed by the Department of Probation, if necessary, to make more careful choices in the future and not be a recidivist.

3.      Restoring the Victims to Whole:

As stated above, this was a financial crime that can be adequately remedied through restitution.  Colucci has fully paid his restitution. Incarceration will not further benefit the victim in any way.

Colucci is enormously remorseful and has fully accepted his responsibility for the mistakes that led to the instant prosecution.  We respectfully submit to Your Honor that, in light of Colucci's otherwise good character, and the relevant factors under 18 U.S.C. §3553(a), a non-custodial, non-Guidelines sentence is appropriate and will act as an effective deterrent.  On behalf of Colucci, his family, friends, and the numerous individuals who have submitted letters herein, we respectfully pray that this Court not imprison Colucci, but instead, empower him to resume a law-abiding life amongst his family, friends, and business associates.

Thank you for your courtesy and consideration.

Sincerely,

Richard S. Kestenbaum
RSK/dos
Encl.

cc:     Meghan Wing                          Charles P. Kelly, Esq.
        United States Probation Officer      Assistant U.S. Attorney
        Meghan_Wing@nyep.uscourts.gov        Charles.Kelly@usdoj.gov

# U.S. v. Daniel Colucci

# DEFENDANT'S OBJECTION TO PRE-SENTENCE INVESTIGATION REPORT



**KESTENBAUM & MARK** LLP
ATTORNEYS AT LAW

RICHARD S. KESTENBAUM*
SCOTT L. KESTENBAUM

OF COUNSEL
BERNARD S. MARK
JILL S. MONOSON

*MEMBER NEW YORK AND FLORIDA BARS

40 CUTTER MILL ROAD, SUITE 300, GREAT NECK, NY 11021

TEL: (516) 466-0410
TEL: (516) 487-0810
FAX: (516) 829-3729

RKESTENBAUM@KMTAXLAW.COM

April 8, 2024

*Filed Under Seal via ECF*

Honorable Gary R. Brown
United States District Judge
U.S. District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

RE:   ***United States v. Daniel Colucci* – Docket No. 23-CR-00417-001 (GRB)**

Dear Judge Brown:

Please accept this letter as Defendant's objection to portions of the Pre-Sentence Investigation Report issued on March 26, 2024. While Defendant agrees that there are twelve (12) counts in the Indictment, the Court's records should reflect that Defendant pled guilty to all twelve (12) counts of the Indictment, not just count 12. There are no open counts requiring resolution.

The Defendant further objects to the Probation Department's conclusion that an Order of Restitution be entered in the amount of $803,241.00. Although that amount is equal to the total tax loss amount for guideline purposes, it is not the correct measure for restitution purposes.

In the instant matter, Defendant was charged under 26 U.S.C. § 7202 for failing to collect and pay over withheld taxes to the United States. Section 7202 does not apply to the portion of payroll taxes imposed on employers that are not withheld from employees and held in trust for the government. This is made clear in the Criminal Tax Manual maintained by the Department of Justice in Section 9.03 thereof, acknowledging that restitution ordered on account of a defendant's § 7202 conviction is limited to the withheld amounts and does not include those payroll taxes that are not withheld from employees and held in trust for the government. Restitution in these types of cases is limited to losses caused by the specific conduct underlying the offense of conviction. Attached hereto are the relevant pages of the Criminal Tax Manual.

At this time, the Defendant also desires to update the status of his health. As was recognized by the Probation Office, Defendant has been diagnosed with prostate cancer and has elected to be treated at Memorial Sloan Kettering which will begin with pre-surgical testing on April 4, 2024. This will be followed by high doses of radiation for two weeks, concluding with MRI testing.

 KESTENBAUM
& MARK LLP
ATTORNEYS AT LAW

This should all be concluded by May 31, 2024, if the treatment begins on time. As a result, Defendant will be requesting a short adjournment of his sentencing date.

Thank you for your consideration of this request.

Very truly yours,

Richard S. Kestenbaum
RSK/dos
Encl.

Cc:    Charles P. Kelly                          Meghan Wing
        Assistant United States Attorney          United States Probation Officer
        *Via Email: Charles.Kelley@USDOJ.gov*     *Via Email: Meghan_Wing@NYEP.UScourts.gov*

### *9.03 GENERALLY*

Section 7202 applies to "[a]ny person required under [Title 26] to collect, account for, and pay over any tax imposed by [Title 26]." Although the primary focus of § 7202 is on taxes required to be withheld from the gross wages paid to employees, that is not its exclusive purview. The statute applies to any person obligated to collect and pay over to the United States a Title 26 tax imposed on another person.[2] When § 7202 is used outside the employment tax situation, however, care should be taken to confirm that the tax is a collect-and-pay-over tax and not a tax imposed directly on the defendant. *See* CTM 9.04[1].

The Internal Revenue Code imposes four types of tax with respect to wages paid to employees: income tax, Social Security tax, Medicare tax, and federal unemployment tax. Income tax is imposed on employees based upon the amount of wages they receive. 26 U.S.C. § § 1, 61(a)(1). Social Security tax and Medicare tax are imposed by the Federal Insurance Contributions Act, and are collectively referred to as FICA taxes.[3] FICA taxes are separately imposed on employees and on employers. 26 U.S.C. §§ 3101(a) (imposing Social Security tax on employees); 3101(b) (imposing Medicare tax and Additional Medicare tax on employees); 3111(a) (imposing Social Security tax on employers); 3111(b) (imposing Medicare tax on employers). Federal unemployment tax, imposed by the Federal Unemployment Tax Act (FUTA), is imposed solely on employers.[4] 26 U.S.C. § 3301. As explained below, because FUTA and employer FICA

---

[2] *See, e.g.*, 26 U.S.C. § 3402(q) (payors of gambling winnings in excess of $1,000 required to collect tax imposed on recipient of winnings); 26 U.S.C. §§ 4261 & 4291 (airlines required to collect certain excise taxes imposed on passengers); 26 U.S.C. § 4251 (providers of "communications services," which includes certain telephone services, required to collect excise tax imposed on users of service).

[3] Section 3101(a), applicable to employees, and Section 3111(a), applicable to employers, impose (subject to annual ceilings) a 6.2% tax for Social Security, which is referred to as "Old-Age, Survivors, and Disability Insurance." Section 3101(b), applicable to employees, and Section 3111(b), applicable to employers, impose a 1.45% tax for Medicare, which is referred to as "Hospital Insurance." Section 3101(b)(2), also applicable to employees, imposes an Additional Medicare tax equal to 0.9% of wages in excess of certain wage limits.

[4] Section 3301 currently imposes (subject to an annual ceiling) a Federal Unemployment Tax in the amount of 6% of wages paid.

- 2 -

are taxes imposed directly on employers, neither is a collect-and-pay-over tax within the purview of § 7202. *See* CTM 9.04[1].

*Note: Section 7202 applies to the tax required to be withheld from the wages paid to "employees"; it does not apply to payments made to independent contractors. See **United States v. Kahre**, 737 F.3d 554, 580-581 (9th Cir. 2013) (identifying the factors for determining whether a worker is an employee or an independent contractor; court determined the workers were employees and sustained the § 7202 convictions).*

Employers are required to withhold employee FICA and income tax from the wages paid to their employees, and to pay over the withheld amounts to the United States.[5] 26 U.S.C. §§ 3102(a) (imposing on employer duty to collect employee's share of FICA), 3102(b) (imposing on employer duty to pay over employee FICA), 3402 (imposing on employer duty to withhold income taxes from employee's wages), 3403 (imposing on employer duty to pay over income taxes required to be withheld from employee's wages). The employer's duty to pay the United States the amount that is required to be collected exists even if the taxes are not actually withheld from the wages

---

[5] With respect to employment taxes, the "employer" is generally the common law employer; that is, the entity or person "for whom an individual performs or performed [the] service ... as the employee of such person." 26 U.S.C. § 3401(d). Generally, the relationship of employer and employee exists when the person for whom the services are performed has the right to control and direct the individual who performs the services. *See* 26 C.F.R. §§ 31.3121(d)-1; 31.3306(i)-1; 31.3401(c)-1. Section 3401(d)(1) provides for a very limited exception to the common law employer's obligation to withhold, report, and pay over income taxes, where (1) the common law employer does not have legal control of the payment of the wages; and (2) a third party does have legal control of the payment of wages. *See **Cencast Services, L.P. v. United States**,* 62 Fed.Cl. 159, 170 (2004) (§ 3401(d)(1) was enacted "to cover certain special cases, such as ... certain types of pension payments."); ***Winstead v. United States***, 109 F.3d 989 (4th Cir. 1997); 26 C.F.R. § 31.3401(d)-1(f). When § 3401(d)(1) applies, it has the effect of transferring the employment tax responsibilities from the common law employer to the third-party who has legal control of the payment of wages. Section 3401(d)(1) does not apply to the contractual relationship that exists between a common law employer and a Professional Employer Organization (PEO), discussed at 9.04[2], if the common law employer provides to the PEO the funds used to make the wage payment to employees. For wages paid for quarters beginning on or after March 31, 2014, however, 26 C.F.R., § 31.3504-2 provides that a PEO and the common law employer are both liable for the common law employer's unpaid employment taxes if the PEO is designated to perform the acts of an employer. *See* 9.04[4].

- 3 -

of the employee. *See, e.g.*, **United States v. Simkanin**, 420 F.3d 397 (5th Cir. 2005) (responsible person's § 7202 convictions based upon failure to collect).

  The employee FICA and income tax required to be withheld and paid over are commonly referred to as "trust fund taxes," reflecting 26 U.S.C. § 7501(a)'s provision that tax required to be collected or withheld "shall be held to be a special fund in trust for the United States." *See* **Slodov v. United States**, 436 U.S. 238, 243 (1978). Section 7501(b) states that "[f]or penalties applicable to violations of this section, see sections 6672 and 7202." The statutory text of § 7202 and of § 6672, which imposes a civil penalty equal to 100% of the tax that should have been collected and paid over, largely track each other.[6] Case law construing § 6672 thus is helpful in construing § 7202. *See* **Slodov**, 436 U.S. at 247-48. Accordingly, except as to § 7202's criminal *mens rea* element, cases construing and applying § 6672 are liberally cited herein.

  As noted, § 7202 applies to "[a]ny person required under [Title 26] to collect, account for, and pay over any tax imposed by [Title 26]." Section 7202 is accordingly limited to Title 26 taxes imposed on another that the defendant is statutorily obligated to collect or withhold for payment to the United States. *See* CTM 9.04[1]. Therefore, § 7202 does not apply to the portion of the FICA tax imposed on employers or to the FUTA tax. Nor does § 7202 apply to unpaid corporate income tax. Such non-trust fund taxes do, however, constitute relevant conduct for a § 7202 conviction, increasing the total tax loss to be considered by the sentencing court.

  *Note: Prosecutors should remember that restitution ordered on account of a defendant's § 7202 convictions must be limited to not only the quarters of conviction but also the trust fund portion of a specific quarter, unless the defendant agrees to pay restitution in the amount of the relevant conduct tax loss. See, e.g.,* **United States v. Lord**, *404 Fed.Appx. 773, 2010 WL 5129152 (4th Cir. 2010) (government conceded amount of*

---

[6] 26 U.S.C. § 6672(a) provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

- 4 -

*restitution ordered on § 7202 convictions constituted reversible plain error because the amount ordered was not limited to the trust fund tax for the quarters of conviction). As an alternative to charging § 7202, prosecutors may charge violations of the duty to pay with respect to both the employee and employer portions of employment tax; for example, by charging evasion in violation of 26 U.S.C. § 7201.[7] See generally **United States v. McKee**, 506 F.3d 225, 233-34 (3d Cir. 2006); **United States v. Butler**, 297 F.3d 505, 509 (6th Cir. 2002).*

**9.03[1] A responsible person can be charged with a personal income tax offense for claiming credit on a Form 1040 for income tax not "actually withheld"**

Treasury Regulation (26 C.F.R.) § 1.31-1(a) provides that if income tax is "actually withheld" from an employee, the employee is entitled to a credit for the amount withheld even if the tax is not paid over to the IRS by the employer. Whether funds have been "actually withheld" is determined by "whether the funds functionally left the control of a taxpayer." *May v. Commissioner*, 137 T.C. 147, 152-154 (2011). The Tax Division has had success in charging responsible persons with a personal income tax offense for claiming credit on a Form 1040 for income tax that was not "actually withheld." *See United States v. May*, 174 Fed. Appx. 877, 2006 WL 890658 (6th Cir. 2006) (also convicted on § 7201 evasion counts); *United States v. Blanchard*, 618 F.3d 562, 576 (6th Cir. 2010) ("Rather than creating an overly formalistic division between the personal and

---

[7] If evasion of payment, in violation of § 7201, is charged, prosecutors should take care to distinguish between the employment tax owed by the employer and the civil trust fund recovery penalty that can be assessed against responsible persons under § 6672. *Cf. United States v. Farr*, 536 F.3d 1174 (10th Cir. 2008) (vacating § 7201 evasion count on the ground the indictment had been constructively amended, where the indictment alleged the defendant evaded employment tax, but further alleged, inaccurately, that the evaded tax was personally owed by the defendant (as opposed to the corporation), and the jury was instructed that the defendant could also be convicted of evading a § 6672 civil trust fund penalty she personally owed); *United States v. Farr*, 591 F.3d 1322 (10th Cir. 2010) (holding that double jeopardy did not bar retrial); *United States v. Farr*, 701 F.3d 1274, 1287-88 (10th Cir. 2012) (holding that the defendant could be charged, and was properly convicted, under § 7201, with evading a trust fund recovery penalty (which is treated as a tax, *see* 26 U.S.C. § 6671) assessed under § 6672).

- 5 -

# U.S. v. Daniel Colucci

# REFERENCE LETTERS

July 7, 2024

To Whom it May Concern:

My name is Kathi Colucci and I have been married to Daniel for 50 years and we have three grown children and seven grandchildren together. Over the years I have had the opportunity to witness his character and values firsthand. Throughout our marriage, I have known Dan to be a person of unwavering integrity. He has always been dedicated to his family and has never hesitated to lend a helping hand to those in need.

Dan is a confident individual of strong character and lives his life with integrity. He has shown himself to be a generous and honest husband, father and employer. He was the first in his family to attend college. He started working for a collection agency a few years after graduating and realized that he was capable of running a business on his own. His strong will, remarkable work ethic and determination paid off and he has owned MCS Claim Services, Inc for 35 years. He has worked very hard over the years to provide steady employment for his employees and for our own family. His employees know that they can lean on him and depend on his support whether it is work related or with regard to their personal lives. He is always ready to help anyone in need. Through his business he has sponsored and supported various charitable events over the years, we proudly participate in these events to support different causes through our community.

The news of this situation has totally caught me by surprise. I have always trusted Dan since and I would never think that he would do anything that was not 'on the up and up.' He has been taking care of all financial matters and I have trusted him emphatically. Even though this mistake was made, I know that he is an honest man, who we can rely on. I am proud of be his wife and know that his error can be something he can move forward from and become an even better person. While he has made mistakes, as we all do, he has taken full responsibility for his actions and is committed to making amends.

In addition to navigating these charges against him, he was recently diagnosed with prostate cancer. Like this error he has tried to carry this burden alone. Our close-knit family has come together to support Dan and I through his treatments and care. They learned from him how to step up and take care of someone when they are in need. A conviction would not only impact Dan but it would impact our entire family. It would be devastating emotionally and financially, especially considering he is currently still under the care of the oncologists.

In conclusion, I respectfully request that the court consider Dan's overall character and the positive contributions he has made to our family and community. I believe he is truly remorseful for his actions and is committed to making things right. Thank you for considering my perspective.

Sincerely,


Kathleen Colucci

**Christopher Colucci**

29 10th Street

Carle Place, NY 11514

ccolucci@mcsclaim.com

516-567-0009


To Whom It May Concern:

My name is Christopher Colucci.  Thank you for taking the time to read
this character letter on behalf of my father, Daniel Colucci.

I am 47 years old and the first-born son of Daniel. I can speak to his
high moral character and integrity as his son.  He has imbued my
siblings and I with a moral rectitude that I am proud of each day.  A
character and value system that has been the foundation of my life in
all aspects.  As a husband and father that has been instrumental in
how I go about each day and what I try to instill in my own children.

I can speak of him not just as a son but also as an employee as I have
worked daily with him for over twenty years and seen firsthand how he
has influenced and supported hundreds of people as their boss.  He is
someone that they not only rely on for a paycheck but the knowledge
and trustworthiness of someone that will support you in good times and
bad.  He has been there for people in times of trouble when they need
support, or a family member needs a job, or someone is in trouble.
Lending a valuable ear or giving astute advice when needed.  People
use the knowledge he gives to better their lives and the lives of
their families. The people employed at MCS have become a family and
most have worked here for over twenty years.  He has taken that
massive responsibility of caring for and nurturing people seriously as
each person becomes a respected member of the team.  It is not easy to
earn the trust and loyalty of people, but he has done this through the
reliability of his character and never-ending supply of positivity.

My father worked above and beyond to instill in us from an early age that we must give back and pay forward all the good that we have acquired and the knowledge that we have gained.  He took the time and effort to coach all my youth sport teams growing up.  Giving up his time to not only help me but to inspire groups of my friends and their parents.  I hope I can follow this example with my own children.  To show them what I was shown by my father.  That being a true servant leader maintains integrity, makes decisions based on ethics and morals, and serves a higher purpose.

It is no shock to me that my father has turned his attention to all his grandchildren including my son and daughter.  Intent on being a huge cog in their lives.  Showing support and love the only way he knows how.  By being there and by being fully present.  My children will always have their grandfather being a role model to hold onto throughout their lives.

The situation my father is facing is very challenging, but he is meeting it head on with courage and perseverance as he looks to make amends.  He taught me as a devout Catholic that forgiveness for one who is truly repentant is a blessing and because we know God's mercy in Jesus Christ.

Thank you for taking the time to read my character letter for my father, Daniel Colucci.  I truly believe in my father's honor and integrity, and I will stand by him throughout this ordeal as I am confident in his continued quest to being a valuable member of society.

Please contact me if you need anything else on this matter.

Sincerely,

Christopher Colucci

**Ashley C. Colucci**
81 Washington Ave, Glen Head, NY 11545
AshleyColucci@yahoo.com,  (516) 263-6845

July 2, 2024

To Whom it May Concern:

I am Ashley Colucci, and I am writing the character letter for my father, Daniel Colucci, whom I have known for 43 years, both as his child and as someone who deeply respects his character.

With respect to the charges against my father I am writing a letter to offer a more complete picture of him as a person. My father is an amazing person, a man of utmost integrity and honesty. Throughout my life, he has consistently shown unwavering support and love for our family. His dedication to his responsibilities as a father has always been apparent, and he has instilled in me values of compassion and hard work through his own actions.

I can say without a doubt that he is a person of good moral character. My father has always operated with integrity. He is everyone's go to person when they need advice, assistance and guidance through life's challenges. He has taken care of his family, both immediate and extended, financially and emotionally. He has always been a reliable, steadfast person. Whether it's a ride to the airport, help with moving or transport to or from the hospital, we all know we can count on him.

In our community, my father is highly regarded for his willingness to lend a helping hand when needed. For instance, he volunteered for over a decade with St. Edward's CYO, demonstrating his commitment to making a positive impact. Through his role on the board, he donated his time and knowledge to help build a program for all kids to learn, grow and have fun. He was a beloved coach to my brothers and I and also to our friends and neighbors. His participation and leadership instilled in me the importance of community. He taught us that donating our time was valuable; stepping up and being a leader in community was the model for how to live our lives.

I was attending Fordham University on September 11th, 2001 when the twin towers were attacked by terrorists. Having no idea of the exact nature of the events transpiring around me, I was alone and scared. I called my father who quickly reminded me, "Ashley, you are strong. People need help. Go to the closest hospital and ask them what you can do to help. You don't need to be scared because you are very capable and can help." This conversation truly shifted my perspective, not only for that day where I went to St. Luke's Roosevelt and helped to coordinate a blood drive, but for the rest of my life. So many New Yorkers came out that day to help. I recognized then and still to this day that even when we are in difficult situations, we can step into our power and help others.  Without my father's leadership and guiding voice, I'm not sure how I would have changed my outlook that day; from being terrified to being a helper. He has always reminded me of the capacity and power I have as a person.

**Ashley C. Colucci**
81 Washington Ave, Glen Head, NY 11545
AshleyColucci@yahoo.com,  (516) 263-6845

It was through his inspiration and dedication to service that I started my career at Bellevue Hospital, serving a vulnerable population, working to improve the lives of those less fortunate than myself. I now am of the proud parent of four children, who all look up to their Popi. He has stepped into the role of grandparent as we all expected. Attending all of their sporting events, practices, providing rides, treats and encouragement no matter what their endeavors. My children and I know we can always count on him to be there for us, no matter the circumstances. We are all so lucky to have him as a role model in our lives.

The current situation has been challenging for our family but I have witnessed my father face it with courage and a determination to make amends and learn from the experience.

In conclusion, I firmly believe that my father's character and integrity make him a valuable member of society. I am committed to supporting him throughout this difficult time and am confident that he will continue to contribute positively to our community.

Thank you for considering my perspective on my father's character. Should you require any further information, please do not hesitate to contact me.

Sincerely,

Ashley Colucci

**Gerard E Connors**

15 Beechhurst Ave. ~ Floral Park, NY 11001 ~ USA
Phone 516 884 3724 ~ E-mail gconnors46@yahoo.com

June 30, 2024

To Whom It May Concern,

As the former principal of New Hyde Park Memorial High School, I became
acquainted with Daniel Colucci through various youth activities. For several
years he was actively involved with a junior golf program and swim team
activity during the summer months. These programs were designed to provide
wholesome activities for teenage children to promote sportsmanship and
collegial development. During this time, Dan was the most reliable role
model for these adolescence. There was never a time when I questioned his
patience and guidance for these youngsters. During the same period of time, I
learned that he had been an active Board member of the CYO at St Edwards
RC Church.

In 2018 I organized a fund raiser for a friend whose son was severely autistic.
I called many of the people I knew who were in youth activities. One of the
first to respond in terms of time and money was Dan Colucci. His generosity
and support was appreciated by all involved.

I am unaware of Dan's financial and legal problems. However, I can attest to
his selfless support for youth activities and his character in supporting various
teenagers going through a difficult period of their lives. For that I am very
grateful.

Sincerely,

Gerard E Connors

June 28, 2024

**Daniel Colucci**
779 Glen Cove Ave
Glen Head, New York
11545

To Whom It May Concern,

I have known Daniel Colucci for more than thirty years. He has been a very important person in my life. In need, Dan has always been there for me.

The thing is that I am not the only one who feels this way. Dan lives by "a friend in need is a friend indeed".

Dan is an outstanding father and husband. He is the nucleus of a very loving family. He and his wife Kathi fostered a tight and caring home; an example for everyone who has come in contact with them.

Dan has been generous in giving his time and money to philanthropic causes. He has done that in his professional and personal life.

In all our life scenarios together, I know Dan to be honest, loyal, and of very high character. He is an outstanding citizen and trusted friend.

Sincerely,
Carmine Giugliano

Daniel Colucci
779 Glen Cove Ave
Glen Head, New York
11545

To Whom It May Concern,

I have had the privilege of knowing Danny Colucci for about thirty five years. He has always been a good friend to me, not only to me but to all those who know him.

Danny is an upstanding person, kind, supportive, and honest, in my life, he has always demonstrated his friendship in times of need but also in good times as well.

To really understand Danny, one has only to look at his family. He is a family man in every sense of the word. A loving husband, father, and grandfather, he personifies all that is good in a person.

Danny gives his time, energy and support to many causes because he is a good person. Whether it is serving on committees, or donating to charitable causes, Danny feels it is his duty to give back.

I consider Danny a lifelong friend; a friendship I am proud of and grateful for.

Sincerely,

Diane Sorace

June 28, 2024

To whom it may concern,

I have known Daniel Colucci for 60 years.  We started playing little league baseball together.  I have always admired his competitiveness and his willingness to be loyal to his friends.
As time went on, I admired how much he cared for and respected the people who worked for him and how he made people in his company feel like they were part of a family. This act isn't his true nature and he remains a credit to the Long Island community
As a person who has known Dan for 60 years, I am proud to call him my friend.


*Thank you,*

*Richard Hoshino, President*

*Baybrent Construction Corp.*
1637 Sycamore Ave
Bohemia, Ny 11716
631-652-6558

July 4, 2024
Daniel Colucci
779 Glen Cove Ave
Glen Head, New York
11545

To Whom It May Concern,

I have had the privilege of knowing Danny Colucci for about thirty five years. He has always been a good friend to me, not only to me but to all those who know him.

Danny is an upstanding person, kind, supportive, and honest. In my life, he has always demonstrated his friendship in times of need but also in good times as well.

To really understand Danny, one has only to look at his family. He is a family man in every sense of the word. A loving husband, father, and grandfather, he personifies all that is good in a person.

Danny gives his time, energy and support to many causes because he is a good person. Whether it is serving on committees, or donating to charitable causes, Danny feels it is his duty to give back.

I consider Danny a lifelong friend; a friendship I am proud of and grateful for.

Sincerely,

Diane Sorióca

July 1, 2024

To whom it may concern,

I am writing to provide a character reference for Dan, whom I have had the honor of knowing for over 25 years. During this time, I have observed Dan to be a person of exceptional integrity, kindness, and responsibility.

Dan has consistently demonstrated a strong commitment to his family, friends, and community. He is known for his selflessness and willingness to help others, often going out of his way to provide support and assistance. This compassionate nature is a testament to his strong moral values.

I have witnessed firsthand the positive influence Dan has on those around him. His honesty, reliability, and kindness are qualities that define him as an individual. I am confident that Dan will continue to uphold these values and contribute positively to society.

I respectfully ask that you consider this character reference when making your decision. I believe that Dan's actions and character reflect positively on him, and I am certain that he will continue to be a person of integrity and compassion.

Thank you for your time and consideration.

Sincerely,
Dr. Gabriel Jean-Louis

# U.S. v. Daniel Colucci

# MEDICAL REPORT

COLUCCIDAN-1\00099596.000



Memorial Sloan Kettering
Cancer Center

July 8, 2024

Re: Daniel Colucci

To Whom It May Concern:

Mr. Colucci is a patient under my care for treatment and management of his prostate cancer.

He was seen initially in our office March 28. 2024 and subsequently underwent 5 radiation treatments beginning May 8. 2024 and is currently scheduled for repeat labs and a follow up in our office August 5. 2024.

If you need additional information, you may contact our office at 516-559-1553.

Sincerely,

Michael B. Bernstein, MD

**Memorial Sloan Kettering Cancer Center**
1101 Hempstead Turnpike, Uniondale, NY 11553   www.mskcc.org
NCI-designated Comprehensive Cancer Center